# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| DIANNA L. BROWN,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br><br>Defendant. | Civil Action No. 3:13-cv-00659<br>Judge Nixon / Knowles |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff was not disabled and denying Plaintiff Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), as provided under the Social Security Act ("the Act"), as amended. The case is currently pending on Plaintiff's "Motion for Judgment Based Upon the Administrative Record." Docket No. 19. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 26.

For the reasons stated below, the undersigned recommends that Plaintiff's "Motion for Judgment Based Upon the Administrative Record" be GRANTED, and that the decision of the Commissioner be REMANDED.

1

# I. INTRODUCTION

Plaintiff originally filed for DIB and SSI benefits on October 19, 2000, alleging that she had been disabled since August 29, 2000. Docket No. 14, Attachment ("TR"), TR 79.[1] These applications were denied both initially (TR 51) and upon reconsideration (TR 53). On July 16, 2012, Plaintiff received a hearing conducted by Administrative Law Judge ("ALJ") Mack H. Cherry (TR 75), who denied Plaintiff's applications on January 31, 2003 (TR 997). The Appeals Council denied Plaintiff's request for review on June 18, 2004. TR 20.[2]

Plaintiff filed subsequent applications for DIB and SSI on June 29, 2004, alleging that she had been disabled since August 29, 2000. TR 20, 1048. These applications were denied both initially and upon reconsideration. TR 1012. Plaintiff subsequently requested and received a hearing. *Id.* Plaintiff's hearing on these applications was conducted on May 13, 2005, by ALJ John P. Garner. TR 1011, 1012. Plaintiff and vocational expert ("VE"), Michelle McBroom, appeared and testified. TR 1012.

On August 28, 2007,[3] ALJ Garner issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. TR 1023. On September 21, 2007, Plaintiff timely filed a request for review of this hearing decision.

---

[1] Pagination of the Record begins with the List of Exhibits and includes the Table of Contents.

[2] The Record provided to the Court appears to be incomplete. The parties are, however, in general agreement regarding the procedural history. Accordingly, the undersigned will reference the ALJs' opinions for procedural history where original documents are unavailable.

[3] The ALJ's Notice of Decision for Plaintiff's second set of applications is dated September 6, 2007; however, the undersigned has relied on the date listed in the Appeals Council remand letter (TR 1023) and subsequent ALJ's procedural history (TR 20).

TR 48.

On August 1, 2008, Plaintiff filed new applications for DIB and SSI benefits, alleging that she had been disabled since August 23, 2000, due to bipolar brain disorder, pulled ligaments in her lower back, high blood pressure, irritable bowel syndrome, acid reflux, hypothyroidism, gall bladder surgery, and a birth defect. TR 20, 1057. On August 24, 2010, the Appeals Council issued a letter consolidating Plaintiff's 2004 and 2008 applications for further proceedings and remanding the case for a new hearing and decision. TR 1023–24.

Plaintiff received a third hearing on February 2, 2012, which was conducted by ALJ Scott Shimer. TR 1393. At this hearing, ALJ Shimer indicated that Plaintiff's onset date would be construed as February 1, 2013, due to Plaintiff's original unsuccessful DIB and SSI applications; Plaintiff's attorney acquiesced. TR 1397. Plaintiff, Plaintiff's sister, Loretta Lynn Hawker, and VE Gordon Doss, appeared and testified at the hearing. TR 1394–1428.

On March 16, 2012, ALJ Shimer issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. TR 17. Specifically, ALJ Shimer made the following findings of fact:

    1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2005.

    2.    The claimant has not engaged in substantial gainful activity since June 29, 2004, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

    3.    The claimant has the following severe impairments: bipolar disorder, asthma, obesity, degenerative disc disease, and borderline intellectual functioning (20 CFR 404.1520(c) and 416.920(c)).

    4.    The claimant does not have an impairment or combination

of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except for standing/walking 7 hours or 1 hour uninterrupted; sitting 7 hours total or 2 hours uninterrupted; no work around hazardous moving machinery or unprotected heights; simple, routine and repetitive tasks and only gradual, infrequent workplace changes.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on December 3, 1973 and was 30 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from June 29, 2004, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

TR 23–30.

On May 9, 2012, Plaintiff timely filed a request for review of ALJ Shimer's hearing decision. TR 16. On May 1, 2013, the Appeals Council issued a letter declining to review the case (TR 8), thereby rendering ALJ Shimer's decision the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III. CONCLUSIONS OF LAW

### A. Standards of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine: (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support the conclusion." *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389 (6th Cir. 1999), *citing Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been

further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 245 (6th Cir. 1996), *citing Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the ALJ must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389, *citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). If the Commissioner did not consider the record as a whole, however, the Commissioner's conclusion is undermined. *Hurst v. Sec'y of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985), *citing Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnoses and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

## B. Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in

significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process summarized as follows:

> (1) If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.
>
> (2) If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.
>
> (3) If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments or its equivalent.[4] If a listing is met or equaled, benefits are owing without further inquiry.
>
> (4) If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations). By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a prima facie case of disability.
>
> (5) The burden then shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

*See, e.g.*, 20 CFR §§ 404.1520, 416.920. *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by

---

[4] The Listing of Impairments is found at 20 CFR § 404, Subpt. P, App. 1.

relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. *Moon*, 923 F.2d at 1181; 20 CFR § 404, Subpt. P, App. 2, Rule 200.00(e)(1), (2). *See also Damron v. Sec'y of Health & Human Servs.*, 778 F.2d 279, 281-82 (6th Cir. 1985). Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's prima facie case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments: mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

### C. Plaintiff's Statement Of Errors

Plaintiff contends that the ALJ erred by: (1) finding Plaintiff's irritable bowel syndrome to be non-severe and failing to discuss Plaintiff's high blood pressure and hypothyroidism; (2) failing to consider the combined effects of all of Plaintiff's physical and mental impairments; (3) improperly discounting the opinions of Plaintiff's treating mental health specialists without explanation; (4) failing to consider the totality of Plaintiff's mental impairments by, *inter alia*, improperly considering her GAF scores and failing to consider that "Dr. Leeper and others

8

treating her at VBHCS found her mental functioning was only at a 'slight+' level";

(5) improperly discounting Plaintiff's credibility and the testimony of Plaintiff and her sister;

(6) improperly determining Plaintiff's residual functional capacity; and (7) improperly adopting the findings of the VE. Docket No. 20 at 10–24. Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded. *Id.*, at 25.

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994).

In all cases, the ALJ has a duty to "fully and fairly develop the administrative record," such that a subsequent reviewer can determine the basis for the ALJ's decision. *See, e.g., Johnson v. Sec'y of Health & Human Servs.*, 794 F.2d 1106, 1111 (6th Cir. 1986). In doing so,

9

the ALJ must identify the reasons and basis for crediting or rejecting certain items of evidence (*see, e.g., Morehead Marine Servs. v. Washnock*, 135 F.3d 366, 375 (6th Cir. 1998)), as there can be no meaningful judicial review without an adequate explanation of the factual and legal basis for the ALJ's decision (*Hyatt Corp. v. N.L.R.B.*, 939 F.2d 361, 367 (6th Cir. 1991)).

As will be discussed in greater detail below, while the ALJ's decision in the case at bar addresses the consultative medical and testimonial evidence, the ALJ failed to develop the record with sufficient clarity such that subsequent reviewers could determine the basis for his findings with certainty.

Turning first to Plaintiff's argument that the ALJ failed to discuss her diagnoses of high blood pressure and hypothyroidism, Plaintiff asserts that she was diagnosed with high blood pressure in January 2003 and hypothyroidism in 2002, but that the ALJ failed to consider or discuss either of these conditions in assessing her credibility or determining the combined effects of her impairments. Docket No. 20 at 22-23.

Defendant responds that the ALJ properly considered all of Plaintiff's impairments, both physical and mental. Docket No. 26 at 7-12, 14-15. Defendant further states that Plaintiff's high blood pressure and hypothyroidism did not significantly affect her ability to function, as evidenced by neither Plaintiff nor counsel raising the impairments at the hearing. *Id.* at 15.

The ALJ in the instant action failed to even mention Plaintiff's high blood pressure and hypothyroidism, impairments that Plaintiff asserted in her 2008 disability report as grounds for her disability, which therefore should have been addressed. TR 1057. The ALJ failed to discuss these impairments either at the hearing or in his decision. Therefore, the undersigned cannot determine whether the ALJ was aware of, or considered, Plaintiff's high blood pressure and

hypothyroidism when determining Plaintiff's limitations and abilities. Further proceedings are necessary to fully develop the record regarding Plaintiff's physical impairments and to determine what effect, if any, that these impairments have on Plaintiff's ability to function.

Turning next to Plaintiff's argument that the ALJ's analysis of her mental health treatment records was incomplete and therefore insufficient, Plaintiff asserts, *inter alia*, that the ALJ: (1) improperly discounted the opinions of her treating mental health specialists without explanation; and (2) failed to consider the totality of her mental impairments, by improperly considering her GAF scores and by failing to consider that "Dr. Leeper and others treating her at VBHCS founder her mental functioning was only at a 'slight+' level." Docket No. 20 at 10-19. Plaintiff contends that her mental health treatment records confirm stricter limitations than those determined by the ALJ, and that the ALJ erred by not considering the limitations supported by Plaintiff's treatment records. *Id.* at 17. Plaintiff maintains, therefore, that this action should be remanded to address these issues. *Id.* at 14, 16, 19.

Defendant responds that the ALJ appropriately weighed the opinions of State agency psychologists Rebecca Joslin and Janice Barkley and properly afforded these opinions more weight than Plaintiff's mental health treatment records. Docket No. 26 at 7–9.

The ALJ discussed Plaintiff's GAF scores and mental health treatment records as follows:

> The claimant also has a history of bipolar disorder and borderline intellectual functioning. She has been treated primarily at Volunteer Behavioral Health Care Systems (VBHCS) and Cumberland Mental Health (CMH). Her treatment was long-term, but rather sporadic as there were numerous missed appointments indicated throughout the treatment notes. Ex. 18F, 25F, 27F, 30F, 40F, 42F. The treatment notes generally reflected complaints of depressed mood, occasional crying spells, irritability, excessive cleaning.

11

> The records from VBHCS/CMH show that aside from occasional
> increase in depressed mood, the claimant's symptoms were mostly
> well controlled with her medications. Often her depression would
> increase when her son came for visitation and returned home to his
> father. Overall, the record shows that the claimant's medication
> was helpful in controlling her symptoms. She was reportedly
> pleasant during her office visits, enjoyed her work at prospect,
> denied mood swings, was eating and sleeping well, and had no
> psychoses. Ex. 18F, 25F, 27F, 30F.
>
> . . .
>
> The claimant's Global Assessment of Functioning (GAF) score
> was assessed as 60 nearly throughout all of her mental health
> treatment, indicative of no more than moderate difficulty in social
> and/or occupational functioning per the DSM-IV-TR (2000 text
> revision). . . .
>
> . . .
>
> Mental health treatment shows Global Assessment of Functioning
> scores of 55 to 60 indicative of only moderate difficulties in social
> and/or occupational functioning. DSM-IV-TR (2000 text
> revision). . . .

TR 27, 30, 31, *citing* TR 484–99, 782–975, 1131–1206, 1277–1308, 1318–56.

As an initial matter, it is apparent that the ALJ did not address the opinions of Plaintiff's mental health treatment providers. While the ALJ does discuss the opinions of the State agency psychologists, the ALJ's only statement regarding opinions of Plaintiff's mental health treatment providers was, "There are no *contrary* treating provider opinions available in the medical evidence." TR 31 (emphasis added). Because the ALJ does not mention Dr. Leeper or in any way discuss opinions rendered by Dr. Leeper or Plaintiff's other mental health treatment providers, the undersigned cannot determine which, if any, opinions the ALJ considered, nor can the undersigned determine the weight accorded to such opinions or the reasons therefor.

Accordingly, remand is warranted.

Additionally, although GAF scores are not determinative of disability for Social Security purposes; the Social Security Administration has declined to endorse the GAF scale for "use in the Social Security and SSI disability programs"; GAF scores have no "direct correlation to the severity requirements in [the] mental disorders listings"; a GAF score is not determinative of an individual's RFC; and "the ALJ is not bound to consider [GAF] results at the exclusion of other medically reliable evidence," the ALJ must nevertheless accurately consider the evidence in its entirety. *See, e.g., Presley v. Colvin*, 2014 U.S. Dist. LEXIS 180027 (M.D. Tenn. 2014) at 38-39; *see also Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002); Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50746-01 (August 21, 2000). In the instant action, the ALJ's reference to Plaintiff's GAF scores between 55-60 and statement that Plaintiff's GAF scores were "assessed as 60 nearly throughout all of her mental health treatment," do not demonstrate whether the ALJ was aware of, or considered, Plaintiff's lower GAF scores. Again, while Plaintiff's GAF scores alone cannot constitute grounds for disability, the ALJ does have a duty to accurately consider the entirety of the evidence of record in such a way as to make clear to subsequent reviewers the basis for his opinion. Because the undersigned cannot determine whether the ALJ was either aware of, or considered, Plaintiff's lower GAF scores and any resulting limitations, the ALJ, upon remand, should address this deficiency as well.

While it is clear that the ALJ was aware that Plaintiff received mental health treatment and considered Plaintiff's mental health treatment records to some extent, it is unclear whether the ALJ considered the entirety of those records. Furthermore, the ALJ failed to discuss the

13

treatment notes and opinions of Plaintiff's treating mental health specialists, failed to state the findings from those records that he adopted and that he rejected, and failed to state the weight accorded to those records and the reasons therefor. The undersigned cannot determine the extent to which the ALJ's decision was based on these records. Accordingly, the ALJ has failed to sufficiently develop the record for subsequent reviewers regarding the ALJ's evaluation of Plaintiff's mental health treatment and mental impairments. Further proceedings are necessary to determine the weight afforded to Plaintiff's extensive treatment mental health treatment records.

The Sixth Circuit has held that remand is required despite the existence of substantial evidence to support the ALJ's decision where the ALJ might have reached a different decision had he not misconstrued certain evidence or overlooked other evidence. *Uforma/Shelby Business Forms v. N.L.R.B.*, 111 F.3d 1284, 1292-1293 (6th Cir. 1997). Because the undersigned cannot determine with certainty that the ALJ was aware of or considered Plaintiff's high blood pressure and hypothyroidism, and because the undersigned cannot determine whether the ALJ properly considered the entirety of Plaintiff's mental health treatment records, the undersigned recommends that this action be REMANDED for further consideration of these matters.[5]

## IV. RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's "Motion for Judgment Based Upon the Administrative Record" be GRANTED, and that the decision of the Commissioner be REMANDED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14)

---

[5] Because the undersigned recommends that this action be remanded, the undersigned will not analyze Plaintiff's remaining statements of error.

14

days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140 (1985), *reh'g denied,* 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72.

_____
E. CLIFTON KNOWLES
United States Magistrate Judge
